# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**JORDAN STEVE TRUJILLO, JR.**

       **Plaintiff,**

vs.                                  **No. CIV 11-0004 WDS-SMV**

**MICHAEL J. ASTRUE, Commissioner**
**of the Social Security Administration,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum. Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security, who determined that Plaintiff was not eligible for benefits. Having considered Plaintiff's Motion and Memorandum Brief [Doc. 22], Defendant's Response [Doc. 23], and the administrative record and applicable law, the Court finds that Plaintiff's Motion is well taken and it will be granted and that this matter will be remanded to the Commissioner of Social Security for further proceedings consistent with these findings.

**Background**

Plaintiff was born on March 13, 1981 and has past relevant work experience as a maintenance worker/janitor.  Tr. 31, 202-203.  Plaintiff applied for benefits on November 9, 2007. Tr. 54.  He alleged that he became disabled as of April 17, 2007. Tr. 54. Plaintiff alleged that he was disabled as a result of bilateral club feet, borderline intellectual functioning, back pain and depression/anxiety. Tr. 76. Plaintiff's application was denied at the initial level, Tr. 26, and at the reconsideration level.  Tr. 24.  Plaintiff appealed by filing a request for a hearing by an administrative law judge ("ALJ"). Tr. 36.

A hearing was held on July 22, 2008 before ALJ John R. Morris, who heard testimony from Plaintiff.  Tr. 197-213.  The ALJ entered a decision on October 28, 2008 finding Plaintiff not disabled. Tr. 12-18.  On November 12, 2008, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 7. The Appeals Council denied Plaintiff's request for review on November 4, 2010, thus rendering the ALJ's decision the final decision of the Commissioner, from which Plaintiff now appeals.  Tr. 3. Plaintiff filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review and Applicable Law**

This Court may only review the Commissioner's decision to determine whether it is supported by substantial evidence and whether correct legal standards were applied. *Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court should not re-weigh the evidence nor should it substitute its judgment for that of the Commissioner. *Id.* Instead, the Court should

2

meticulously examine the record to determine whether the Commissioner's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988). The "substantial evidence" standard is satisfied by more than a scintilla, but less than a preponderance, of evidence. *Id.* However, evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir. 1989).

A sequential five-step analysis applies in determining whether an adult claimant is disabled and entitled to benefits under the Social Security Act. *See Williams,* 844 F.2d at 750-52; 20 C.F.R. §§ 404.1520, 416.920. First, the question is whether the claimant is engaged in substantial gainful activity. *Williams,* 844 F.2d at 750. If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At the second step, the question is whether the claimant has an impairment or combination of impairments that is severe. *Id.* If not, the claimant is not disabled; however, if the claimant makes the required showing of severity, the analysis proceeds to step three. *Id.* at 750-51. At step three, the question is whether the claimant has an impairment or combination of impairments that meets or equals an impairment listed at Appendix 1, Subpart P, of 20 C.F.R. Part 404 ("Listings" or "Listed Impairment"). *Id.* at 751. If so, the impairment is considered to be presumptively disabling. *Id.* If not, the analysis proceeds to step four, where the question is whether the impairment prevents the claimant from doing past work. *Id.*

The claimant is not disabled if he or she can perform past work. *Id.* If the claimant cannot perform past work, the analysis proceeds to step five, where the burden shifts to the Commissioner to establish that the claimant has the RFC "to perform other work in the national

3

economy in view of his age, education and work experience." *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 142 (1987)).  The claimant is entitled to benefits unless the Commissioner establishes that the claimant can "perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (quoting *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984)).

## Summary of the ALJ's Decision

At step one of the sequential five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 17, 2007, the alleged onset date. Tr. 14. The ALJ found at step two that Plaintiff had the severe impairments of bilateral club feet and borderline intellectual functioning. Tr. 14.  The ALJ found at step three that Plaintiff's impairments were not severe enough to meet or medically equal any of the Listings.  Tr. 14.  At step four, the ALJ concluded that Plaintiff had the RFC to lift ten pounds frequently and twenty pounds occasionally; to stand and walk eight hours per workday; to sit without limitation; to push/pull with his upper and lower extremities within the strength limitations cited; to perform occasional postural activities; and to perform mentally unskilled types of work.  Tr. 15.  The ALJ found that the plaintiff had no manipulative, visual, communicative, or environmental limitations.  Tr. 15. Given the RFC assessment, the ALJ found that Plaintiff could perform his past relevant work as a janitor. Tr. 17.

Plaintiff alleges the following: (1) the ALJ committed legal error in neglecting to give controlling weight to Plaintiff's treating physician; (2) the ALJ's step five finding that Plaintiff is capable of performing other work is unsupported by substantial evidence where the ALJ did not

present all of Plaintiff's functional limitations to the VE at the hearing; and (3) the ALJ's credibility determination is unsupported by substantial evidence.

## Analysis

**1) Was the ALJ's Residual Functional Capacity Supported by Substantial Evidence?**

Plaintiff argues that there are two reasons that the ALJ's Residual Functional Capacity was not supported by substantial evidence: the ALJ's failure to discuss the non-examining state agency consultant's PRT assessment and the ALJ's substitution of his own medical opinion for that of a doctor. The two arguments are interrelated, and relate to the medical evidence relating to Plaintiff's club feet. The Court first notes that there was no dispute about the fact that Plaintiff had been born with club feet, and had had surgery at a young age to address the problem. However, those medical records were not in the administrative record. Plaintiff had recently seen doctors for treatment of a stubbed toe and sprained ankle, and those records were included in the administrative record. Plaintiff had received no recent treatment for his club feet, but claimed residual pain that made it difficult for him to walk for long periods of time.

Plaintiff was referred to Dr. Ryan for a physical consultative examination in September 2007. Dr. Ryan noted that Plaintiff's ankles had anatomic and bony deformities and multiple scars with marked lack of mobility; and both feet had rather extensive scars and extensive anatomic abnormalities about the feet, ankles, and toes. Tr. 183. Dr. Ryan reported that Plaintiff had told him that he had had multiple surgeries, that he needed additional surgery, that it hurt to walk and that he had to walk slowly. Tr. 182. Dr. Ryan concluded that Plaintiff had "major foot abnormalities," and stated "I would guess he has 50% loss of function of both feet." Tr. 184.

At the request of the Defendant, Dr. Rayme Romanik, a non-examining state agency physician, completed a Physical Residual Functional Capacity Assessment.  Tr. 173.  Dr. Romanik found that Plaintiff had the exertional capacity to occasionally lift and/or carry no more than 20 pounds, frequently lift and/or carry no more than 10 pounds, stand and/or walk for a total of 2-4 hours in an 8-hour workday at intervals of 30-60 minutes at a time, and sit for a total of about 6 hours in an 8-hour workday.  Tr. 174-175.

The ALJ did not specifically state the weight that he was giving to the medical opinions of Dr. Ryan and Dr. Romanik, but it is apparent from the ALJ's opinion that he gave their opinions no weight whatsoever, as the ALJ concluded that Plaintiff could stand or walk 8 hours in a workday.  As noted above, Plaintiff claims this is error.  Defendant responds by noting that, while the ALJ did not specifically mention Dr. Romanik's report in his opinion, it is apparent that the ALJ reviewed the report because he adopted certain of Dr. Romanik's observations into his opinion.  Secondly, the Defendant asserts that it was not error for the ALJ to ignore Dr. Ryan's opinion that Plaintiff had 50% loss of function in his feet because that opinion was a "guess."  Finally, Defendant argues that the Plaintiff is asking the Court to substitute its own judgment for that of the ALJ.

Defendant's position is not well taken.  Drs. Ryan and Romanik presented the only medical evidence in this case relating to Plaintiff's club feet.  The other medical records cited by Defendant refer to Plaintiff's treatment for a stubbed toe and a sprained ankle.  The physicians who treated Plaintiff for those ailments were not called upon to assess Plaintiff's ability to stand or walk 8 hours during a normal workday, and there is no evidence that they did so.  Drs. Ryan and Romanik were specifically retained to determine Plaintiff's ability to stand or walk, and they

did so.  If the ALJ was dissatisfied with Dr. Ryan's opinion because it was a "guess" or because he did not assess Plaintiff's gait[1], the solution was not to ignore the opinion, but to contact Dr. Ryan for clarification, or to have Plaintiff examined by a specialist who *could* offer a qualified opinion.

In the Court's opinion it would have been error for the ALJ to conclude, based only upon the medical evidence relating to the sprained toe and sprained ankle, and the paperwork submitted by Plaintiff, that Plaintiff was physically capable of standing and walking 8 hours a day with his club feet.  *See, e.g.*, *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997) (ALJ should order consultative examination when record establishes reasonable possibility of disability and result of examination could be expected to assist in resolving disability issue).  It appears that Defendant agreed that it had a duty to develop the medical record, because it had Plaintiff examined by Dr. Ryan and Dr. Romanik.  By ignoring the opinions of those doctors rather than seeking clarification from them or obtaining additional medical evaluations, the ALJ effectively made the disability determination without competent medical evidence.  Whether the Court defines this as a failure to develop the record per *Hawkins v. Chater*, *supra*, or a case where the ALJ impermissibly substituted his own medical opinion for that of a doctor, as in *Eason v. Chater*, 951 F. Supp. 1556 (D.N.M. 1996), is of no particular relevance.  Plaintiff's motion is well taken and this matter will be remanded for further proceedings.

---

[1] Dr. Ryan did observe that Plaintiff had "marked lack of mobility" in his ankles, and it is difficult for the Court to imagine that marked lack of mobility in the ankles would not affect gait, at least to some extent.  The Court, of course, has not seen Plaintiff walk, and notes that Plaintiff's appearance at the ALJ hearing was by video.

**Conclusion**

For the foregoing reasons, this Court finds that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision is hereby granted and this matter is remanded to the Commissioner of Social Security for further proceedings consistent with these findings.

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**